DAVID GARDNER, BLACKMAN E. BROWNELL and NOEL BAR-
BER *v.* THOMAS S. ROGERS, ELIHU DUTCHER, SHERMAN LADD
and ELIJAH PRATT.

### (In Chancery.)

> Where a suit in relation to lands granted, in a town, to the first settled min-
> ister, was pending between such town and an individual claiming said
> lands, as such minister, and such suit was compromised by his executing
> a deed to the town, the town, at the same, passing a vote as to the dispo-
> sition of the rents ;—*Held*, that the rents were to be appropriated in pur-
> suance of such deed and vote, and were not to be distributed exclusively
> among the denomination of Christians to which the grantor belonged.

THIS was a bill of interpleader. The orators were select-
men of the town of Pownal, and, as such, had in their pos-
session, certain moneys arising from the rents of land grant-
ed to the first settled minister in said Pownal. The land
in question had been in controversy between Benjamin Gard-
ner and the town of Pownal, the former having claimed it
as the first settled minister of said town. To settle that
controversy, the said Gardner proposed to convey, and did,
on the 2d day of December, 1789, convey said land to the
then selectmen of said Pownal and their successors in of-
fice, "in trust for the use and benefit of said town forever,
" the annual rents and profits of which are to go and be
" disposed of to and for the use and support of a gospel
" minister or ministers in the eastern and western parts of
" the town, in proportion to the number of inhabitants at-
" tending or inclined to each respective meeting, excepting
" always the church of England, or society of that order, in
" consequence of these having heretofore a right given them
" through the town for a similar purpose."

On the same 2d of December, 1789, the town, at a meet-
ing legally warned for that purpose, voted to accept said
deed, and to appropriate the annual rents and profits of said
land to the use and support of the gospel in said town of
Pownal, forever, every voter of said town to have his equal
proportion of said rents and profits, if called for by such
individuals, to be contributed for the support of the gospel,
wherever, in said town, they should choose ; and said town,
at said meeting, further voted to exclude the church of En-

gland from any share in said rents and profits.

The orators were chosen selectmen on the 24th of March, 1837, and held the money received by them from the rents of said land, because, as charged in the bill, they did not know in what manner it ought legally to be distributed.

At the date of said Gardner's deed, there was no religious society in the town of Pownal excepting baptists. The defendants were described as each claiming the whole or a part of the rents, in their several capacities as ministers of the gospel in said town, and the prayer of the orators was, that the defendants might be required to interplead and settle and adjust their respective claims to said money, so that the orators might be enabled to pay over the amount in their hands to the persons legally entitled to it.

It appeared from the several answers of the defendants, that the defendant, Pratt, was the minister of the methodist society in said town, duly ordained ; that the defendant, Rogers, was a minister duly settled over the baptist society in the eastern part of said town, and, as such, claimed the whole of the rents of said land, on the ground that the society of baptists formerly existing in the western part of said town, about the year 1810, became extinct by the death and removal of many of its members, and by the union of said last mentioned society with the baptist society in the eastern part of said town.

It further appeared that the defendant, Dutcher, was an elder or minister of the baptist denomination, and preached in the eastern part of said town till about the 25th of February, 1837, when he ceased to preach, but had ever since resided in said town.

It also appeared that the defendant, Ladd, was a minister of the reformed methodist church in said Pownal, and occasionally preached as such.

It also appeared, that at a meeting of the town of Pownal, holden in February, 1790, it was voted to settle Elder Caleb Nichols and Elder Francis Bennett on the ministerial lands in said Pownal, the said Nichols and Bennett being both ministers of the denomination of baptists, and that the town accepted the report of a committee previously appointed to divide, and

who did divide said lands between said Nichols and Bennett as such ministers.

*J. S. Robinson,* for orators.

———— ————, for defendants.

The opinion of the court was delivered by

WILLIAMS, Chancellor.—The construction to be put on the deed and vote of December 2, 1789, will determine this case. These transactions are sufficiently explicit without resorting to any other source to discover the intent for which they were made. It appears that the right of the grantor was in dispute, that there was a law suit between him and the town, which was terminated by the execution of the deed and the passing of the vote. There is no uncertainty in the words made use of, nor can we see any necessity of resorting either to the character or situation of the parties, or their religious profession, to ascertain what was done or what was intended. If the grantor belonged to that denomination of Christians who are called baptists, and was disposed to favor that denomination, his wishes were probably gratified at the time, as there was then no other society of Christians united or incorporated within the limits of the town. It was in his power, if he and the town were disposed to settle the controversy between them in that way, to secure the rents of the land to the denomination of which he was a minister, and it not being so secured at that time is evidence that it was not so intended. And the fact of his being a member of that society, if it is to be taken into consideration at all, would lead to the conclusion that no such preference was intended, as none was expressed. The excluding of one denomination, to wit, the church of England, and the reasons given therefor, particularly when there was no society of protestant episcopalians in town at the time, plainly shows that all others, who were gospel ministers in that town, over any society, were to receive their proportion of the proceeds of the grant. The vote of the town in 1790 is very far from evincing that a different view of the effect of the deed and previous vote was entertained. The division was made among all the religious societies then existing, and such would be the appropriation at this time, if there were no others in town. The

mànner in which the proportion of each was to be ascertained might be attended with some difficulty. The words in the deed are, "*in proportion to the number of persons attending or inclined to each respective meeting.*" The vote of the town is more definite by declaring that "*each voter,*" &c. is to have his proportion. This, however, was the manner in which it was usual to direct the division of moneys appropriated for the support of the gospel. In the act of the legislature, passed in 1794, appropriating the rents and profits of the Glebe rights for the support of religious worship, they were to be distributed, when there was more than one religious teacher, in proportion to the number of rateable polls belonging to the respective congregations resident in the town. The rents of the ministerial lands, by another act passed in 1798, were to be applied to the use of the several settled ministers, in proportion to the number of their *several congregations.* By an act passed in 1818, the rents of the same lands were appropriated to the use of the religious society or societies in such towns, *in proportion to the number of which said society consists.*

The rents of the lands in Pownal must be appropriated for the support of the gospel, or a gospel minister, in said town, and each *voter* may direct where his proportion shall be paid for that purpose. But it must be to some society or association where there is a minister officiating, and it must be contributed to the support of the gospel;—and if the voter is not a member of any society he may direct his proportion to be paid to any society in town which has a minister. It does not follow that every one, who is or who claims to be a preacher, is entitled to receive any proportion of the money, unless he is preaching to some society, either purely voluntary, or formed agreeably to the directions of the statute. The trustees are to divide the rents among the several religious societies or associations which are formed in the town, excluding the church of England, and voters, not belonging to any such society, may, if they please, direct to which of the societies their proportion shall be distributed.

It does not appear that Mr. Dutcher is preaching to any society, and is not entitled to any part of the rents and profits. There is a society of Baptists of which Mr. Rogers is pastor, a society of methodists with whom Mr. Pratt is con-

BENNINGTON,<br>
*February,*<br>
1839.<br>
—————<br>
Gardner *et al.*<br>
*v.*<br>
Rogers *et al.*

BENNINGTON, nected, and a society of reformed methodists with whom
February, Mr. Ladd is connected, who are severally entitled to a pro-
1839. portion of the rents of the ministerial right of land in Pow-
Gardner et al. nal. Let it be referred to a master to ascertain the amount
v. of the money now on hand, and the proportion to which these
Rogers et al. several societies will be entitled according to the vote of the
town on the 2d December, 1789, and the trustees will be di-
rected to pay accordingly.